**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID Nos. 1304002901 |
| | ) | 1406003139 |
| | ) | |
| AARON L. HENRY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted: January 27, 2016
Decided: February 29, 2016

**COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED.**

Robert J. O'Neill, Jr., Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Aaron L. Henry, James T. Vaughn Correctional Center, Smyrna, Delaware, *pro se.*

PARKER, Commissioner

This 29th day of February 2016, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court that:

**BACKGROUND, FACTS AND PROCEDURAL HISTORY**

1. The charges at issue stem from an incident that occurred on June 4, 2014. On June 4, 2014, members of the Governor's Task Force ("GTF") were conducting surveillance in the area of Room 101 of the Econo Lodge in Newark, Delaware. After contacting the hotel clerk it was determined that Dominique Waters rented the room for one night.[1] Dominique Waters had a 2013 conviction for fraudulently obtaining a prescription and forgery. GTF approached Room 101 and knocked on the door. Defendant Aaron Henry slid open the curtain to the room, saw the officers, and quickly closed the curtain. Defendant Henry then ran to the area of the bathroom.[2] The police continued to knock on the door and about 2-3 minutes later Henry answered the door.[3]

2. Defendant's left hand and forearm were saturated with water consistent with him attempting to flush drugs down the toilet.[4] Since Defendant was on probation an administrative warrant was approved to search the room.[5] The police saw the toilet overflowing and towels on the ground where it appeared someone was trying to stop the water from proceeding out of the bathroom or clean it up.[6] Dominique Waters told the police that upon hearing the police at the door Defendant wanted her to hide the drugs down her pants. When she refused, he attempted to flush the drugs but the toilet backed

---

[1] July 17, 2014 Preliminary Hearing Transcript, at pgs. 3-4.
[2] July 17, 2014 Preliminary Hearing Transcript, at pgs. 4-5.
[3] July 17, 2014 Preliminary Hearing Transcript, at pgs. 4-5.
[4] July 17, 2014 Preliminary Hearing Transcript, at pgs. 4-5.
[5] July 17, 2014 Preliminary Hearing Transcript, at pgs. 5-6.
[6] July 17, 2014 Preliminary Hearing Transcript, at pg. 6.

up and overflowed. The police recovered approximately 1.71 grams of heroin, 10.6 grams of crack cocaine and $1,290.00. Defendant claimed the money was his.[7]

3. As of the result of the June 4, 2014 incident, Defendant was arrested on Drug Dealing Possession with Intent to Deliver Cocaine; Drug Dealing Possession with Intent to Deliver Heroin; Possession of a Controlled Substance Tier 2 quantity Cocaine; Possession of a Controlled Substance Tier 1 quantity Heroin; and Tampering with Physical Evidence. These charges comprise Criminal Action No. 1406003139.

4. At the time of the June 4, 2014 incident, in a different case, Criminal Action No. 1304002901, Defendant was serving probation for a conviction of tampering with physical evidence. His probation had been transferred to Maryland via the Interstate Commission for Adult Offender Supervision (ICAOS) on January 27, 2014. The June 4, 2014 incident described above resulted in new drug charges, occurred in the State of Delaware (when Defendant did not have permission leave Maryland), and occurred after Defendant's established curfew. The new drug charges, leaving the State of Maryland, and not complying with the established curfew, would each constitute a violation of the terms of Defendant's probation.

5. If convicted of the charges stemming from the June 4, 2014 incident, Defendant was eligible to be sentenced as a habitual offender, pursuant to 11 *Del. C.* § 4214(a), and could be facing up to life imprisonment.

6. Due to Defendant's probation status, he was scheduled for a fast track hearing on July 9, 2014. At that time, the State offered Defendant a plea to Drug Dealing Tier 2, Tampering with Physical Evidence and VOP. The State agreed to cap its Level V

---

[7] July 17, 2014 Preliminary Hearing Transcript, at pgs. 5-9.

sentence recommendation to 10 years on the drug dealing charge, and to recommend Level IV and Level III probation on the VOP and tampering charge.

7.     Defendant rejected the plea and the case was scheduled for a contested violation of probation hearing on July 30, 2014.

8.     On July 18, 2014, John M. Willard, Esquire was retained to represent Defendant Henry.

9.     After Attorney Willard was retained to represent Defendant, he was able to convince the State to reduce its sentence recommendation from 10 years to 8 years.[8]

10.     On July 30, 2014, Defendant agreed to accept the plea offer with an 8 year Level V sentence recommendation by the State. Defendant's acceptance of the plea offer was made after "extensive consultations" with counsel which included reviewing the police report, the charges, the violation of probation report, the transcript of the preliminary hearing, and the State's motion to declare Defendant a habitual offender.[9]

11.     On July 30, 2014, Defendant accepted the State's plea offer and pled guilty to Drug Dealing Tier 2, tampering with physical evidence, and VOP. As part of the plea agreement, the State agreed to dismiss all of the remaining charges and to seek habitual offender sentencing on the drug dealing charge but to cap its recommendation for Level V time to a total of 8 years.

12.     On October 24, 2014, Defendant was sentenced as a habitual offender on the Drug Dealing charge to a total of 8 years of Level V time, followed by various levels of probation on the tampering with physical evidence charge. On the VOP charge in Criminal Action No. 1304002901, that probation was discharged as unimproved.

---

[8] Affidavit of Trial Counsel in response to Rule 61 motion.
[9] Affidavit of Trial Counsel in response to Rule 61 motion.

13.     Defendant did not file a direct appeal to the Delaware Supreme Court.

14.     On January 15, 2015, Defendant filed a motion for reduction of sentence, [10] which the court denied on March 23, 2015, finding that the sentence was imposed pursuant to a plea agreement and was appropriate for all the reasons stated at the time of sentencing. [11]

## DEFENDANT'S RULE 61 MOTION

15.     On September 16, 2015, Defendant filed the subject motion for postconviction relief. [12] Defendant's brief in support of his Rule 61 motion was filed on November 30, 2015. [13] In the subject motion, Defendant raises three claims: 1) the plea was coerced and Defendant was under the influence of "pysc medication" at the time of plea; 2) ineffective assistance of counsel; and 3) illegal detention since the charges should have been dismissed.

16.     Before making a recommendation, the Commissioner enlarged the record by directing Defendant's trial counsel to submit an Affidavit responding to Defendant's ineffective assistance of counsel claims. Thereafter, the State filed a response to the motion. Defendant submitted a reply thereto. [14]

17.     The claims raised in the subject motion are procedurally barred, waived and without merit.

### A)     Procedural Bars Preclude Consideration of Defendant's Claims

18.     Prior to addressing the substantive merits of any claim for postconviction relief, the court must first determine whether the defendant has met the procedural requirements

---

[10] Criminal Action No. 1406003139- Superior Court Docket No. 10
[11] Criminal Action No. 1406003139- Superior Court Docket No. 11
[12] Criminal Action No. 1304002901-Superior Court Docket No. 13; Criminal Action No. 1406003139- Superior Court Docket No. 13.
[13] Criminal Action No. 1304002901-Superior Court Docket No. 20; Criminal Action No. 1406003139- Superior Court Docket No. 20.
[14] Super.Ct.Crim.R. 61(g)(1) and (2).

of Superior Court Criminal Rule 61.[15]  If a procedural bar exists, then the claim is barred, and the Court should not consider the merits of the postconviction claim.[16]

19.    Rule 61 (i) imposes four procedural imperatives:  (1) the motion must be filed within one year of a final order of conviction;[17] (2) any basis for relief must be asserted in the first timely filed motion for postconviction relief absent exceptional circumstances warranting a subsequent motion being filed; (3) any basis for relief must have been asserted at trial or on direct appeal as required by the court rules unless the movant shows prejudice to his rights and cause for relief; and (4) any basis for relief must not have been formally adjudicated in any proceeding. The bars to relief however do not apply to a claim that the court lacked jurisdiction or to a claim that new evidence exists that movant is actually innocent or that there is a new law, made retroactive, that would render the conviction invalid.[18]

20.    In accordance with the procedural mandates, Defendant was required to raise his claims, with the exception of his ineffective assistance of counsel contentions, on direct appeal.[19] Defendant's ineffective assistance of counsel claims are not procedurally barred because a Rule 61 motion is the appropriate vehicle for raising this claim.[20]

21.    As to the claims at issue involving alleged errors, discrepancies, or wrongdoing by the court or the State, these claims are procedurally barred by Rule 61(i)(3), for Defendant's failure to raise them on direct appeal.  All of Defendant's claims were known to him at the time he accepted the plea since they involve alleged improprieties at

---

[15] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[16] *Id.*

[17] If a final order of conviction occurred on or after July 1, 2005, the motion must be filed within one year. See, Super.Ct.Crim.R. 61(i)(1)(July 1, 2005).

[18] Super.Ct.Crim.R. 61 (effective June 4, 2014).

[19] See, *Malin v. State,* 2009 WL 537060, at *5 (Del.Super. 2009); *Desmond v. State,* 654 A.2d 821, 829 (Del. 1994).

[20] *Id.*

the pre-trial and plea stage. Therefore, there is no justifiable reason for Defendant's failure to raise these issues in a direct appeal if Defendant genuinely believed the claims had any merit. Defendant's claims, except his ineffective assistance of counsel claims, are procedurally barred.

**B) Defendant's Claims Were Waived Upon Entry of His Plea**

22. In addition to some of Defendant's claims being procedurally barred, all of Defendant's claims were waived upon the entry of Defendant's guilty plea.

23. Although Defendant now claims that his plea was coerced, Defendant's present contention is contrary to the representations he personally made at the time he accepted his plea, admitted his guilt, and was sentenced.

24. A defendant is bound by his answers on the plea form and by his testimony at the plea colloquy in the absence of clear and convincing evidence to the contrary.[21] In this case, the Truth-in-Sentencing Guilty Plea Form, Plea Agreement and plea colloquy reveal that Defendant knowingly, voluntarily and intelligently entered a guilty plea to the charges for which he was sentenced.[22]

25. At the plea colloquy, Defendant represented to the court that his responses on the truth-in-sentencing guilty plea form and the plea agreement were accurate and that he fully discussed the plea agreement with counsel.[23] Defendant further represented that nobody was forcing him to enter his plea. Defendant represented that he was freely and voluntarily pleading guilty to the charges listed in the plea agreement. Defendant represented that he was not being threatened or forced to do so by his attorney, by the

---

[21] *State v. Harden,* 1998 WL 735879, *5 (Del. Super.); *State v. Stuart,* 2008 WL 4868658, *3 (Del. Super. 2008).

[22] July 30, 2014 Plea Transcript; July 30, 2014 Plea Agreement; July 30, 2014 Truth-In-Sentencing Guilty Plea Form.

[23] July 30, 2014 Plea Transcript, at pgs. 10-14.

6

State, or by anyone else.[24] Defendant also represented that he was satisfied with his counsel's representation.[25]

26.    Defendant acknowledged his guilt on the drug dealing and tampering with physical evidence charges for which he pled guilty.[26] Only after finding that Defendant's plea was entered into knowingly, intelligently and voluntarily, did the court accept the plea.[27]

27.    During the plea colloquy and also in the Truth-in-Sentencing Guilty Plea Form, Defendant represented that he understood that by pleading guilty he was waiving his constitutional rights: to have a trial; to be presumed innocent until the State proves each and every part of the charges against him beyond a reasonable doubt; to a trial by jury; to cross-examine witnesses against him; to present evidence in his defense; to testify or not testify; and to appeal, if convicted.[28] Defendant represented that he understood that by pleading guilty he was giving up all his constitutional rights listed in the Truth-in-Sentencing Guilty Plea Form.[29]

28.    Defendant represented that he had fully discussed this matter with his counsel and that he was satisfied with his counsel's representation.[30]

29.    In counsel's Affidavit in response to Defendant's Rule 61 motion, Defendant's trial counsel represented that he had "extensive consultations" with Defendant to discuss

---

[24] July 30, 2014  Plea Transcript, at pg. 12-13;  Truth-In-Sentencing Guilty Plea Form dated July 30, 2014.
[25] July 30, 2014 Plea Transcript, at pg. 13; Truth-In Sentencing Guilty Plea Form dated July 30, 2014.
[26] July 30, 2014  Plea Transcript, at pg. 10-11.
[27] July 30, 2014  Plea Transcript, at pg. 14.
[28] July 30, 2014 Plea Transcript, at pgs. 3-13; Truth-in-Sentencing Guilty Plea Form dated July 30, 2014 .
[29] July 30, 2014 Plea Transcript, at pgs. 3-13; Truth-in-Sentencing Guilty Plea Form dated July 30, 2014 .
[30] July 30, 2014 Plea Transcript, at pg. 13; Truth-in-Sentencing Guilty Plea Form dated July 30, 2014.

the plea offer.[31] They reviewed the police report, the charges, the violation of probation report, the transcript of the preliminary hearing and the State's motion to have Defendant declared a habitual offender.[32]

30.     Defendant has not presented any clear, contrary evidence to call into question his prior testimony at the plea colloquy, Plea Agreement or answers on the Truth-In Sentencing Guilty Plea Form. Any claim that Defendant's plea was not voluntary is without merit.

31.     Since Defendant's plea was entered into voluntarily, intelligently and knowingly, Defendant waived his right to challenge any alleged errors, deficiencies or defects occurring prior to the entry of his plea, even those of constitutional proportions.[33]

32.     All of Defendant's claims presented herein were waived when Defendant voluntarily entered his plea. Indeed, all of Defendant's claims, including those alleging ineffective assistance of counsel stem from allegations of defects, errors, misconduct and deficiencies which occurred prior to the entry of the plea. All of Defendant's claims were waived when he knowingly, freely and intelligently entered his plea.

### C)     Defendant's Claims Are Without Merit

33.     In addition to some of Defendant's claims being procedurally barred and all of his claims being waived, Defendant's claims are also without merit.

34.     Defendant's first claim is that his plea was coerced. Defendant claims that he was on "pysc medications" at the time he entered the plea which impaired his ability to

---

[31] As to Criminal Action No. 1304002901- Superior Court Docket No. 19; As to Criminal Action No. 1406003139-Superior Court Docket No. 19- Affidavit of Defendant's Trial Counsel in response to Defendant's Rule 61 motion.
[32] As to Criminal Action No. 1304002901- Superior Court Docket No. 19; As to Criminal Action No. 1406003139-Superior Court Docket No. 19- Affidavit of Defendant's Trial Counsel in response to Defendant's Rule 61 motion.
[33] *Somerville v. State,* 703 A.2d 629, 632 (Del. 1997); *Modjica v. State,* 2009 WL 2426675 (Del. 2009); *Miller v. State,* 840 A.2d 1229, 1232 (Del. 2004).

understand the nature and extent of his plea. He also claims that during the plea colloquy he seemed unsure of some of consequences of his plea.

35. Any claim that Defendant did not freely and voluntarily accept the plea is directly at odds with the representations Defendant, himself, made to the court at the time he accepted the plea. As discussed above, at the time Defendant accepted the plea, Defendant represented to the court that he had just recently retained Attorney Willard to represent him but still wanted to move forward with his plea[34] and that he was freely and voluntarily pleading guilty to the charges listed in the plea agreement.[35]

36. Specifically, the court asked Defendant: ". . . [I]s it your desire to enter into this plea freely and voluntarily because you are guilty of these offenses?" To which Defendant Henry responded: "Yes. Yes, ma'am."[36] Defendant represented that he was satisfied with his attorney's representation and that he was not being threatened or forced to enter into the plea by his attorney, by the State or by anyone else.[37]

37. During the plea colloquy, Defendant represented to the court that he had not had any drugs within the last 24 hours that would prevent him from understanding the court proceeding.[38] Defendant represented on the Truth-in-Sentencing Guilty Plea Form that he was not under the influence of drugs at the time he was entering the plea.[39] Defendant's trial counsel was aware that Defendant was being treated for anger, depression and anxiety and, at sentencing, advised the court that Defendant was prescribed Haldol and Prozac for these conditions.[40] There was no indication that these

---

[34] July 30, 2014 Plea Transcript, at pgs. 7-8.
[35] July 30, 2014 Plea Transcript, at pg. 12-13; Truth-In-Sentencing Guilty Plea Form dated July 30, 2014.
[36] July 30, 2014 Plea Transcript, at pg. 13.
[37] July 30, 2014 Plea Transcript, at pg. 12-13; Truth-In-Sentencing Guilty Plea Form dated July 30, 2014.
[38] July 30, 2014 Plea Transcript, at pg. 8.
[39] July 30, 2014 Truth-in-Sentencing Guilty Plea Form.
[40] October 24, 2014 Sentencing Transcript. at pg. 8.

9

medications in any way impaired Defendant's ability to fully understand the court proceedings in which Defendant accepted the plea and admitted his guilt. Moreover, the record reflects that Defendant personally represented that he was not taking any medications that would impair his ability to understand the court proceeding. The record further reflects that Defendant asked relevant questions during the plea colloquy to make sure he fully understood the parameters and consequences of accepting his plea, before accepting the plea offer and entering into the plea.

38.     During the plea colloquy, Defendant asked some questions and expressed concerns about the Level IV time that the State would be recommending as part of the plea, and in response to those questions the State clarified that it would be seeking 6 months at Level IV.[41] The  prosecutor then asked Defendant:  "Did that answer your question?"  Defendant responded:  "Yes".  Defendant's trial counsel asked Defendant: "Do you agree with that?"  Defendant responded:  "Yes."[42]

39.     After the Level IV issue was clarified, the court asked Defendant if he still wanted to move forward with his plea.  Defendant Henry responded:  "Yes."[43]

40.     Defendant's guilty plea represented a rational choice given the pending charges, the evidence against him, and the potential sentence he was facing.  As discussed above, Defendant's plea was entered into voluntarily, freely and intelligently.  Any claim that the plea was coerced or that he was somehow impaired in understanding the consequences of entering into the plea is belied by Defendant's representations at the time of the plea and is without merit.

---

[41] July 30, 2014 Plea Transcript, at pg. 7.
[42] July 30, 2014 Plea Transcript, at pg. 7.
[43] July 30, 2014 Plea Transcript, at pg. 8.

10

41. Defendant next claims that his counsel provided ineffective assistance for not conducting a proper investigation of the charges, for not contesting the search of the Econo Lodge room, and for not investigating more about the "pysc medications."

42. To prevail on an ineffective assistance of counsel claim in the context of a plea challenge the defendant must not only claim that his counsel was deficient, but the defendant must also establish that counsel's actions were so prejudicial that there was a reasonable probability that, but for counsel's deficiencies, the defendant would not have taken a plea but would have insisted on going to trial.[44] Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[45]

43. The United States Supreme Court has reiterated the high bar that must be surmounted to prevail on an ineffective assistance of counsel claim.[46] The United States Supreme Court cautioned that in reviewing ineffective assistance of counsel claims in the context of a plea bargain, the court must be mindful of the fact that "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks."[47]

44. Defendant has not established that his counsel was deficient nor has he established that he suffered any actual prejudice as a result thereof. Defendant understood that by accepting the plea offer he was waiving his right to a trial by jury, waiving his right to contest the sufficiency of the evidence, waiving his right to cross-

---

[44] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Somerville v. State,* 703 A.2d 629, 631 (Del. 1997); *Premo v. Moore,* 131 S.Ct. 733, 739-744 (2011).
[45] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[46] *Premo v Moore,* 131 S.Ct. 733, 739-744 (2011).
[47] *Id.*, at pg. 741.

examine witnesses, present a defense, and to appeal any conviction.[48] Defendant could have elected to go to trial and put the State to its proofs. Defendant chose instead to accept a plea offer in return for the State dismissing additional felony charges and agreeing to cap its sentence recommendation to 8 years at Level V. If Defendant proceeded to trial and was convicted the State could have been seeking and Defendant could have been facing a life sentence.

45. Defendant's counsel's representation does not appear to be deficient in any respect. Defendant's counsel negotiated a better plea deal than previously offered by the State before counsel was retained. Defendant's counsel convinced the State to reduce its sentence recommendation to 8 years at Level V from the 10 year recommendation previously offered by the State. Indeed, Defendant represented to the court at the time of his plea that he was satisfied with his counsel's representation. Defendant is bound by his previous representation. Defendant has failed to satisfy either prong of the *Strickland* test and, therefore, his claims of ineffective assistance of counsel fail.

46. As discussed above, Defendant's guilty plea was knowingly, voluntarily and intelligently entered. Defendant cannot now seek to contest the sufficiency of the evidence or the alleged shortcomings of his counsel during the pre-trial and plea process. Defendant's claims were waived when he knowingly, voluntarily and intelligently accepted the plea offer.

47. Defendant's final claim is that he is being illegally detained. Defendant contends that there was insufficient evidence to support his conviction and complains of other pre-trial deficiencies. At the time of the plea, Defendant admitted his guilt to the charges for which he pled guilty. Defendant could have rejected the plea agreement and had a trial

---

[48] July 30, 2014 Plea Transcript; Truth-in-Sentencing Guilty Plea Form dated July 30, 2014.

on the merits. He could have challenged the sufficiency of the evidence and put the State to its burden of proof. If convicted at trial, however, Defendant could have been facing a life sentence. Before accepting the plea, Defendant had "extensive consultations" with his counsel. Defendant understood the plea offer, the risks involved, and the possible sentence he was facing if convicted at trial. Defendant chose to accept the plea offer. Defendant waived his trial, and his right to contest the charges against him, when he knowingly, voluntarily and intelligently entered his plea. This claim is without merit.

48. As discussed above, Defendant's guilty plea was knowingly, voluntarily and intelligently entered. Defendant cannot now seek to contest the sufficiency of the evidence or complain of the alleged shortcomings of his counsel during the pre-trial and plea process. Defendant's claims were waived when he knowingly, voluntarily and intelligently accepted the plea offer. Defendant's claims are procedurally barred, waived and without merit.

49. Defendant's request for the appointment of counsel was denied.[49] Defendant's conviction resulted from a guilty plea. Rule 61, as amended effective June 4, 2014, provides that counsel is to be appointed in a first timely filed Rule 61 motion to assist a defendant whose conviction resulted from a guilty plea only in certain limited exceptional situations.[50] Having fully, thoroughly and carefully considered Defendant's motion and the evidentiary record, none of the exceptional circumstances giving rise to the entitlement to the appointment of counsel exist in this case. Since Defendant has failed to

---

[49] As to Criminal Action No. 1304002901- Superior Court Docket Nos. 17 & 22; As to Criminal Action No. 1406003139- Superior Court Docket Nos. 17 & 22.
[50] Superior Court Criminal Rule 61(e)(2).

overcome the procedural hurdles warranting the appointment of counsel, the appointment of counsel was denied.[51]

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be denied.

**IT IS SO RECOMMENDED.**

_____/s/_____
Commissioner Lynne M. Parker

oc:    Prothonotary
       John M. Willard, Esquire

---

[51] See, Super.Ct.Crim.R. 61(e)(2).